IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:05-CT-621-FL

| | |
|---|---|
| MICHAEL RANKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| DENNIS ROWLAND, et al., ) | |
| ) | |
| Defendants. ) | |

This matter came before the court on the motion for summary judgment (DE # 103) pursuant to Federal Rule of Civil Procedure 56 of defendants Dennis Rowland (hereinafter "defendant Rowland"), Michael A. Munns (hereinafter "defendant Munns"), Bobby Montague (hereinafter "defendant Montague"), and J. A. Reid (hereinafter "defendant Reid"). The matter is ripe for adjudication. For the following reasons, the court grants defendants' motion.

STATEMENT OF THE CASE

On September 6, 2005, plaintiff filed this *pro se* complaint pursuant to 42 U.S.C. § 1983 against the above-named defendants as well as Sharon Snider (hereinafter "defendant Snider"), Richard T. Jones (hereinafter "defendant Jones"), Earnest Sutton (hereinafter "defendant Sutton"), John Doe Maintenance Supervisor 1 and 2, John Doe Health Authority, and John Doe Classification Official (hereinafter collectively referred to as the "John Doe defendants"). In his complaint, plaintiff alleged that defendants Snider and Craig violated his rights under the Eighth Amendment of the United States Constitution because they were deliberately indifferent to his serious medical condition. Plaintiff also alleged a deliberate indifference claim against the John Doe defendants and

defendants Rowland, Munns, Montague, Reid, Jones, and Sutton based upon plaintiff's exposure to the allegedly poor ventilation system. Finally, plaintiff alleged a claim for denial of outdoor recreation against defendants Rowland and Munns. Plaintiff filed a motion to amend his complaint and a motion for a temporary restraining order on September 9, 2005. On October 7, 2005, plaintiff filed a motion for supplemental pleading.

On October 19, 2005, the court conducted a frivolity review of plaintiff's complaint. The court allowed to proceed plaintiff's Eighth Amendment deliberate indifference claim against defendants Snider and Craig and plaintiff's claim for denial of outdoor recreation against defendants Rowland and Munns. The court requested that plaintiff particularize his complaint against the John Doe defendants to provide names for these defendants and to state specifically how each of them violated plaintiff's constitutional rights. The court also requested that plaintiff particularize his complaint against defendants Rowland, Munns, Montague, Reid, Jones, and Sutton to state how these defendants violated his constitutional rights. Finally, the court denied plaintiff's motion for a temporary restraining order. Plaintiff then filed a particularized complaint, a second motion to amend, and two motions for a preliminary injunction.

On January 12, 2006, the court conducted a review of plaintiff's amended pleadings and addressed several pending motions. The court granted plaintiff's two motions to amend and his motion for supplemental pleading. In the course of its review of plaintiff's amended claims, the court dismissed the following claims: (1) plaintiff's particularized claim against defendant Sutton for transferring him to a High Security Maximum Control (hereinafter "H-Con") unit; (2) plaintiff's claim against the John Doe defendants; (3) plaintiff's amended claim that his constitutional rights were violated when the prison toilet was temporarily out of service on October 4, 2005; and (4)

2

plaintiff's particularized Eighth Amendment deliberate indifference claim against defendants Rowland and Jones. The court, however, allowed to proceed plaintiff's claim that defendants Rowland, Munns, Montague, and Reid denied him exercise and subjected him to inadequate ventilation. Finally, the court denied plaintiff's motions for injunctive relief.

On January 24, 2006, plaintiff filed a motion to reconsider the dismissal of his Eighth Amendment deliberate indifference claim against defendants Rowland and Jones. Plaintiff's motion clarified that his claim against these defendants was based upon supervisor liability rather than respondeat superior. Three days later, plaintiff filed another motion for reconsideration, seeking reconsideration of this court's dismissal of defendant Sutton. Plaintiff then filed a series of motions including: (1) a motion for appointment of counsel; (2) a motion for relief from judgment; and (3) a motion to stay.

On April 14, 2006, the court granted in part and denied in part plaintiff's motions for reconsideration. The court allowed plaintiff to proceed on his Eighth Amendment deliberate indifference claim against defendants Rowland and Jones. The court, however, denied plaintiff's motions to reconsider its dismissal of plaintiff's transfer claim against defendant Sutton. The court's April 14, 2006 order also addressed plaintiff's motion for relief from judgment, which claimed that the court failed to conduct a frivolity review of his claim that "defendants acted in an arbitrary and unfair manner when they failed to comply with their own mandatory regulations." The court found that there was insufficient information to conduct a frivolity review and ordered plaintiff to particularize this claim. Finally, in the same order, the court denied plaintiff's motions for preliminary injunction and his motion for appointment of counsel.

3

Following the court's April 14, 2006 order, plaintiff filed several motions including: (1) motions to dispense with the requirement of a supersedeas bond on April 18, 2006 and April 20, 2006; (2) a motion to amend his complaint on April 26, 2006; (3) a motion for reconsideration on April 28, 2006; (4) a motion to supplement his pleadings on May 4, 2006; (5) a motion for an injunction on May 25, 2006; (6) a motion for leave to amend on June 14, 2006; and (7) a motion for permissive joinder of parties on July 5, 2006. Then, on July 11, 2006, defendants Snider, Craig, Rowland, Munns, Montague, and Reid filed a motion to dismiss, arguing that plaintiff failed to state a claim upon which relief may be granted. These defendants then filed a motion for protective order on July 20, 2006.

On July 25, 2006, the court granted plaintiff's April 26, 2006 motion to amend. The court conducted a frivolity review of the claims asserted in plaintiff's amended pleading submitted in response to this court's April 14, 2006 order directing him to particularize his complaint. In the course of its review, the court denied plaintiff's attempt to re-allege a claim against defendant Sutton arising out of his decision to transfer plaintiff to H-Con Supermax. The court also dismissed the following amended claims: (1) plaintiff's claim against the John Doe defendants; (2) plaintiff's claim that, between March 10, 2005 through March 16, 2005, defendants Rowland, Munns, Montague, and Reid acted in an arbitrary and unfair manner when they failed to comply with prison regulations; (3) plaintiff's supervisor liability claims against defendants Rowland and Jones arising out of defendant Craig's alleged failure to provide medical treatment to plaintiff on July 19 and 21, 2005; and (4) plaintiff's deliberate indifference claim against defendant Snider arising out of her alleged failure to allow plaintiff to participate in the sick call system on March 31, 2005. The court, however, allowed plaintiff to proceed on his claim that defendant Craig was deliberately indifferent to his

serious medical condition in violation of the Eighth Amendment because he failed to treat plaintiff on July 19 and 21, 2005. The court also allowed plaintiff to amend his claim to include an Eighth Amendment deliberate indifference claim against defendants Dr. Lightsey (hereinafter "defendant Lightsey") and Nurse Pettiford (hereinafter "defendant Pettiford"). Finally, the court denied plaintiff's motions to dispense with the requirement of a supersedeas bond, his motion to stay the proceedings, his two motions to reconsider, and his motion for a preliminary injunction.

Also on July 25, 2006, plaintiff filed a motion to compel and a motion for default judgment. On July 27, 2006, defendants Craig, Rowland, Munns, Montague, and Reid filed a supplemental motion to dismiss and a response to plaintiff's motion for default judgment and motion to compel. On August 8, 2006, plaintiff filed a second motion for default judgment. Plaintiff filed a response to defendants' motions to dismiss on August 23, 2006. Following his response to defendants' motions to dismiss, plaintiff filed two motions to amend his complaint.

On October 25, 2006, this court entered an order granting plaintiff's May 4, 2006, August 23, 2006, and August 29, 2006 motions to amend, as well as defendant's motion for a protective order. The court denied plaintiff's motion to compel, motion for default judgment, and July 5, 2006 motion to amend. The court granted in part and denied in part the motions to dismiss of defendants Rowland, Munns, Montague, Reid, Snider, and Craig. In particular, the court granted defendants' motions to dismiss against defendants Snider and Lightsey, but denied it as to plaintiff's remaining claims. Finally, the court dismissed as frivolous plaintiff's Eighth Amendment failure to protect from violence claim.

Defendants Craig, Rowland, Munns, Montague, and Reid moved to dismiss plaintiff's claims on November 1, 2006, arguing that plaintiff failed to exhaust his administrative remedies against

5

defendants Craig, Montague, and Reid. Plaintiff responded, defendants filed a reply, and plaintiff filed a sur-reply. Plaintiff subsequently filed a "motion for supplemental pleading and relation back of amendments" and a "motion requesting relief from order," which this court construed as motions to amend. Finally, plaintiff filed a motion for a physical examination. On May 3, 2007, the court entered an order granting defendants' motion for judgment on the pleadings as to plaintiff's claims against defendant Craig, but denying them as to the remaining defendants. The court also denied plaintiff's motions to amend and motion for a physical examination.

On July 27, 2007, defendants Rowland, Munns, Montague, and Reid filed a motion for summary judgment, arguing that plaintiff's claims are without merit. On September 17, 2007, plaintiff filed a response to defendants' motion, a memorandum in opposition to defendants' motion, and an affidavit in opposition to defendants' motion.

## STATEMENT OF FACTS

The facts viewed in the light most favorable to plaintiff are as follows. On March 16, 2005, plaintiff was transferred to Polk Correctional Institution (hereinafter "Polk") because he had been demoted to H-CON status for committing disciplinary infractions at Pasquotank Correctional Institution. (Defs.' Mem., Rowland Aff. ¶ 6.) Plaintiff states that he was exposed to inadequate ventilation, in which dust and lint particles came through the vent into his cell, while he was on H-Con status at Polk. (Compl. p. 8.) Plaintiff also complains that he was subjected to extremely high temperatures, foul odors, and recycled pepper spray due to the inadequate ventilation system. (Pl.'s Am. Compl. (DE # 42) p. 5.) Plaintiff stated that, as a result of the inadequate ventilation, he experienced burning eyes, sore throat, excessive coughing, and mucus containing blood and lint/dust

6

particles. (Id. pp. 8-9.) Plaintiff also alleged that the inadequate ventilation caused a change in his voice and posed an increased risk of developing lung cancer in the future. (Id. p. 13.)

In addition to the inadequate ventilation, plaintiff claims that he was denied outdoor exercise and that the indoor area permitted for exercise was inadequate. Plaintiff states that, as a result of this alleged deprivation, he suffered high blood pressure, severe migraine headaches, poor blood circulation in his legs, back pains, lethargy, weak muscles, depression, and an enlarged heart. (Pl.'s Second Decl. (DE # 8) p. 3.) Plaintiff also states that the alleged deprivation placed him at risk for a heart attack or stroke. (Pl.'s Am. Compl. (DE # 11) p. 4.) Plaintiff was released from H-Con status on March 10, 2006. (Defs.' Mem., Rowland Aff. ¶ 6.)

## DISCUSSION

1. Standing Order

Defendants request that this court enter a standing order directing that plaintiff may not proceed in any action in this court challenging prison conditions before the court has had an adequate opportunity to review relevant medical records. Plaintiff has filed at least four previous cases which have been dismissed as frivolous or for failure to state a claim upon which relief may be granted. Accordingly, plaintiff is unable to proceed on an action in this court without the prepayment of the filing fee unless he alleges that he is under imminent danger of serious physical injury.[1] See 28 U.S.C. § 1915(g). The Fourth Circuit has held that an inmate satisfies the § 1915(g) standard by alleging facts sufficient to establish that he is in imminent danger of serious physical harm. See

---

[1] Plaintiff is subject to the Prisoner Litigation Reform Act (hereinafter "PLRA"), which allows the court to dismiss a prisoner's action "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). This subsection is known as the "three strikes" provision of the PLRA. See Altizer v. Deeds, 191 F.3d 540, 544-45 (4th Cir. 1999).

7

McLean v. Members of State Board of Corrs., 203 F.3d 821, 1999 WL 1295959, *1 (4th Cir. Dec. 30, 1999) (unpublished).

Defendants have presented no authority for their position urging the court to issue a standing order requiring that a court conduct a review of plaintiff's medical records prior to allowing him to proceed with any future action filed pursuant to 28 U.S.C. § 1915(g). Therefore, defendants' request for a standing order is DENIED.

II. Summary Judgment

A. Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must then affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

B. Analysis

Defendants assert the defense of qualified immunity. Qualified immunity shields government officials performing discretionary functions from personal liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which [a] reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); DiMeglio v. Haines,

8

45 F.3d 790, 794 (4th Cir. 1995). This immunity "protects law enforcement officials from 'bad guesses in gray areas' and ensures that they are liable only 'for transgressing bright lines.'" Wilson v. Layne, 141 F.3d 111, 114 (4th Cir. 1998) (quoting Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992)). Immunity applies to "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). Government officials performing a discretionary function are immune from civil damages unless: (i) the official's conduct violates a federal statutory or constitutional right; (ii) the right was clearly established at the time of the conduct; and (iii) an objectively reasonable officer would have understood that the conduct violated that right. Milstead v. Kibler, 243 F.3d 157, 161 (4th Cir. 1991) (citing Wilson v. Layne, 526 U.S. 603, 614-15 (1999)).

1. Inadequate Ventilation

In analyzing qualified immunity, the first step is to determine whether defendants violated a federal statutory or constitutional right. A plaintiff may be entitled to relief pursuant to § 1983 based upon inadequate ventilation if such a condition causes a serious deprivation within the meaning of the Eighth Amendment. See Wilson v. Seiter, 501 U.S. 294, 304-05 (1991); Wall v. Knowlin, No. 9:07-3199-HNH-GCK, 2007 WL 3232129, *6 (D.S.C. Oct. 31, 2007) (unpublished). "In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Wilson, 501 U.S. at 298). The Supreme Court has explained that the first prong is an objective one–the prisoner must show that "the deprivation of [a] basic human need was objectively 'sufficiently serious'"–and the second prong is subjective–the prisoner must show

9

that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.' " See Strickler, 989 F.2d at 1379. Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement. See Hudson v. McMillian, 503 U.S. 1, 9 (1992). In order to demonstrate such an extreme deprivation, a prisoner "must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions," Strickler, 989 F.2d at 1381, or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions. See Helling v. McKinney, 509 U.S. 25, 33-35 (1993). A *de minimis* injury is not sufficient to state an Eighth Amendment claim based upon inadequate ventilation. See Johnson v. Kilgore, No. 7:05-CV728, 2006 WL 42281, *4 (W.D. Va.), aff'd, 211 Fed. Appx. 171 (4th Cir. Dec. 27, 2006) (unpublished).

Beginning with the objective prong of the Eighth Amendment test, plaintiff states that the alleged inadequate ventilation resulted in burning eyes, excessive coughing, changes in plaintiff's voice, and mucus containing blood, lint and dust. Plaintiff also states that the ventilation system subjected him to the risk of developing cancer in the future. Defendants submitted the affidavit of Dr. Phillip E. Stover, which states that he reviewed plaintiff's medical records and that it is his opinion that plaintiff's medical records do not support a claim that a deficiency in Polk's ventilation system cause plaintiff any injury. (Defs.' Mem., Stover Aff. ¶ 25.) Plaintiff has not presented any evidence to refute Dr. Stover's testimony beyond his personal belief connecting the alleged injuries to the H-Con ventilation system. Instead, plaintiff has asserted conclusory allegations. This is not sufficient to state an Eighth Amendment claim. See Odighizuwa v. Ray, No. 7:06CV185, 2006 WL 3041266, *4 (W.D. Va. Oct. 24, 2006) (unpublished).

Even if plaintiff could establish that his alleged injuries were the result of a deficient ventilation system at Polk, he still would not be entitled to relief because the alleged injuries are *de minimis*. A *de minimis* injury does not satisfy the objective prong of the Eighth Amendment test, requiring that a prisoner show that the injury inflicted was sufficiently serious.[2] Therefore, plaintiff is unable to satisfy the objective prong of the Eighth Amendment test.

The court will now consider the subjective prong of the Eighth Amendment test. Plaintiff has presented no evidence that defendants acted with deliberate indifference to the maintenance of Polk's ventilation system. Owen Studt, the heating and ventilation supervisor at Polk, attested to the workings of the H-Con ventilation system. In particular, Mr. Studt stated that the H-Con unit at Polk has its own heating, ventilation, and air conditioning (hereinafter "HVAC") system, which is monitored by a computer that controls the air flow and temperature. (Defs. Mem., Studt Aff. ¶ 6.) The computer operated HVAC system moves air through the unit at the rate of one hundred (100) cubic feet per minute, allowing the air in each cell to be renewed approximately every two minutes. (Id., Studt Aff. ¶ 11.) Mr. Studt further stated that the H-Con HVAC system is maintained on a daily, monthly, and quarterly basis. (Id., Studt Aff. ¶ 6.) The maintenance routine for the HVAC system includes the regular changing of the two air filters which serve the H-Con unit. (Id. Studt Aff. ¶ 16.) During the time that plaintiff was incarcerated in the H-Con unit, both air filters on the HVAC system were changed approximately bi-monthly. (Id. and Ex. C.) There is no evidence that this system was malfunctioning while plaintiff was incarcerated in the H-Con unit--from February 5, 2005 through April 2, 2006. Nor has plaintiff provided any evidence that the HVAC system was

---

[2] The court notes that lung cancer is not a *de minimis* injury. However, plaintiff's medical records demonstrate that he does not have lung cancer. Moreover, his medical records note his increased risk of lung cancer due to his reported twenty-eight (28) year history of smoking. (Defs.' Mem., Stover Aff. ¶ 26.)

11

malfunctioning or that it was inadequate. Therefore, plaintiff has not demonstrated that defendants were deliberately indifferent to the maintenance of the HVAC system in the Polk H-Con unit.

In addition to complaining about the dust and lint particles allegedly emanating from the ventilation system in the H-Con unit at Polk, plaintiff also complained about temperature variations. As stated, the ventilation system at Polk is controlled by a computer. The evidence in the record demonstrates that the H-Con unit's temperature is maintained at seventy-two (72) degrees year round. (Id., Studt Aff. ¶ 11.) Defendants concede that the temperature in the H-Con unit could be affected by inmates tampering with their cell vents or opening their cell windows. Mr. Studt, the HVAC specialist at Polk, testified that, when they become aware of inmate tampering, the HVAC staff act as quickly as possible to remedy any issues. (Id., Studt Aff. ¶ 15.) Accordingly, the evidence in the record demonstrates that the temperature in the H-Con unit is kept at a reasonable and steady temperature, and that when HVAC staff is made aware of temperature problems they take action to remedy the situation. There is no evidence that any defendant was deliberately indifferent to extreme temperatures in the H-Con unit. Nor has plaintiff provided any evidence that defendants acted with deliberate indifference. Therefore, plaintiff has not established a constitutional violation.

Because plaintiff has not demonstrated that defendants acted with deliberate indifference as to either the maintenance of the HVAC system or temperature control, plaintiff is unable to establish a constitutional violation. As a result, defendants are entitled to qualified immunity.

2. Deprivation of Exercise

Plaintiff contends in his complaint that defendants violated his Eighth Amendment rights because they deprived him of outdoor exercise and inadequate indoor exercise. As stated, "[i]n order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must

12

show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler, 989 F.2d at 1379.

Plaintiff is unable to establish the objective prong of the Eighth Amendment test because he is unable to establish that he sustained a serious physical injury as a result of the alleged exercise deprivation. Plaintiff contends that the alleged deprivation resulted in high blood pressure, severe migraine headaches, poor blood circulation in his legs, back pains, lethargy, weak muscles, depression, and an enlarged heart. Plaintiff also states that the alleged deprivation placed him at risk of a heart attack or stroke. Dr. Phillip E. Stover reviewed plaintiff's medical records and attested that the above-stated health problems are not related to plaintiff's alleged deprivation of exercise while he was confined at Polk Correctional Institution from March 2005 through March 2006. (Defs.' Mem., Stover Aff. ¶ 27.) Instead, Dr. Stover attributed plaintiff's issues with hypertension to his over twenty-eight (28) year smoking history and his noncompliance with hypertension treatment. (Id., Stover Aff. ¶¶ 8, 10, and 12 and Ex. B pp. 587, 498, 551, 561, 578, 579, 587, 588, 619, 659, 662, and 834.) Dr. Stover attributed plaintiff's headaches to chronic sinusitis and a 1995 blunt trauma head injury, which resulted in chronic headaches. (Id., Stover Aff. ¶ 16 and Ex. B pp. 475 and 924.)

Plaintiff has not presented any evidence to refute Dr. Stover's testimony regarding his medical condition. Dr. Stover's testimony, along with plaintiff's medical records, demonstrate that plaintiff did not suffer any serious injury as a result of the alleged deprivation of exercise. The court may rely on plaintiff's medical records kept in the ordinary course of business in determining the extent of his injuries. See Stanley v. Hejirika, 134 F.3d 629, 637-38 (4th Cir. 1998); Alexander v. Rice, No. 1:04CV180-01-MU, 2006 WL 2023551, *2 (W.D.N.C. July 18, 2006) (unpublished).

13

Based upon the foregoing, plaintiff has not established that the alleged deprivation of exercise resulted in a serious injury. Therefore, plaintiff is unable to satisfy the objective prong of the Eighth Amendment test.

Even if plaintiff could establish the objective prong of the Eighth Amendment test, he is unable to satisfy the subjective prong because he is unable to show that defendants acted with deliberate indifference. The general rule is that denial of out-of-cell exercise for an extended period of time violates the Eighth Amendment, absent exceptional circumstances. Mitchell v. Rice, 954 F.2d 187, 190 (4th Cir. 1992).[3] Claims concerning opportunities to exercise are evaluated by using a totality of the circumstances analysis, which includes "the overall duration of incarceration, the length of time for which prisoners are locked in their cells each day, . . . and the practical opportunity for the institution to provide prisoners with increased exercise opportunities." Id. at 191. Penological necessities may justify exercise restrictions in some circumstances. See id. at 192; Patterson v. Mitzes, 717 F.2d 284, 289 (6th Cir. 1983). The Fourth Circuit has held, for example, that summary judgment was appropriate where an inmate was held for five months in a county jail that had day rooms adjacent to cellblocks, and where there had been no showing that the inmate's mental or physical health had been threatened by not being provided more space for exercise. Clay v. Miller, 626 F.2d 345, 347 (4th Cir. 1980).

Applying a totality of the circumstances analysis, the evidence in the record demonstrates that plaintiff was on H-CON status at Polk from March 16, 2005 through March 10, 2006. (Defs.' Mem., Rowland Aff. ¶ 6.) Plaintiff's one year confinement on H-CON status is a small fraction of the

---

[3] The Fourth Circuit does not distinguish between indoor and outdoor exercise opportunities. Mitchell, 954 F.2d at 192, n. 4.

14

overall duration of his approximately sixteen (16) year sentence. (See id., Rowland Aff. ¶ 5.) The evidence in the record further demonstrates that plaintiff has not been completely deprived of exercise opportunities while on H-CON status. Rather, he is allowed to exercise for one hour per day, four days per week, in a room adjoining his cell. (Defs.' Mem., Rowland Aff. ¶ 11.) Although plaintiff is not permitted to exercise outdoors, there is a window in the exercise room which allows access to fresh air. (Id., Studt Aff. ¶ 15.) This policy is intended to promote institutional security. (Id., Rowland Aff. ¶ 13.) This policy is necessary because many of the inmates have serious disciplinary problems and are demoted to H-CON status for committing serious disciplinary infractions. Plaintiff, himself, has a history of disciplinary problems in that he has committed thirteen (13) disciplinary infractions since his incarceration in 1997. (Defs.' Mem., Rowland Aff. ¶ 7.)

It is reasonable to infer that transporting high risk inmates, such as plaintiff, outdoors would create an increased risk of injury to staff and other inmates. Based upon a totality of the circumstances, plaintiff is unable to establish a violation of the Eighth Amendment because the temporary exercise restrictions placed on H-CON status inmates at Polk are necessary to preserve the safety of the staff and other inmates. Because plaintiff is unable to establish a constitutional violation, defendants are entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, the court GRANTS defendants' motion for summary judgment (DE # 103). The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this 4th day of March, 2008.

LOUISE W. FLANAGAN
Chief United States District Judge

16